F I L E D
United States Court of Appeals
Tenth Circuit

MAY 12 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALICE BECK and DERALD BECK,

     Plaintiffs-Appellants,

v.

DAHN CORPORATION,

     Defendant-Appellee.

Case No. 96-1538
(D.C. No. 96-WY-851-CB)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **MCKAY** and **HENRY**, Circuit Judges.

The Becks sued their former employer, Dahn Corporation (Dahn), in
Colorado state court, alleging that they both had been fired in violation of the
Americans with Disabilities Act (ADA), 42 U.S.C. § 12101-12213. Dahn
removed the case to federal court and filed a motion for summary judgment on
both claims. The district court granted the motion in favor of Dahn, and the
Becks filed a timely appeal to this court. We affirm in part, reverse in part, and
remand for further proceedings in light of this Circuit's recent opinion in <u>Rascon</u>

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

v. U.S. West Communications, Inc., No. 96-2194, 1998 WL 223465 (10th Cir. May 6, 1998).

## I.   BACKGROUND

Mrs. Beck filed a Disability Report with the Social Security Administration (SSA) on November 24, 1978, in which she stated that her multiple sclerosis kept her from engaging in any substantial, gainful work.  Based on that report and updates she provided the SSA, she has received Social Security disability payments continuously to this day.

On March 4, 1993, Mr. and Mrs. Beck began working for Dahn as an on-site manager team for a self-storage facility in Colorado Springs.  Dahn only hires teams as on-site self-storage facility managers.  Dahn allows the team members to allocate the work between them as they wish as long as the team performs its job satisfactorily.

Dahn fired the Becks on June 28, 1995.  Mrs. Beck sued, claiming that Dahn violated the ADA by firing her because of her disability.  Mr. Beck also sued, asserting a claim under the associational discrimination provisions of the ADA.  Dahn moved for summary judgment based on its theory that (1) Mr. Beck's claim did not state a separate associational discrimination cause of action but rather was derivative of Mrs. Beck's claim and (2) both Becks were judicially

estopped from pursuing their claims because of the sworn statements Mrs. Beck

made in her SSA disability benefits application. The district court granted the

summary judgment motion, and the Becks appealed.

## II. MRS. BECK'S CLAIM

Without making an in-the-alternative argument, Dahn only advances a

judicial estoppel defense in this appeal:

> For the purposes of resolving this appeal, it can be <u>assumed</u> that Mrs. Beck was disabled within the meaning of the ADA, that Dahn's reasoning for discharging Mrs. Beck was impermissibly based on her disabled status, that the Becks' job performance was totally satisfactory, and that Dahn's stated reason for discharging Mrs. Beck was pretextual. . . . Dahn was nevertheless entitled to summary judgment on the <u>legal</u> grounds relied upon by the district court.

Aple's Br. at 5-6 (emphasis in original). Thus, we do not reach the question of

whether Dahn violated the ADA; we only rule on its judicial estoppel argument.

We find that argument lacking, and, therefore, we must remand.

In order to prove discrimination under the ADA, a plaintiff must prove that

she is "a qualified individual with a disability." 42 U.S.C. § 12112(a). The ADA

defines a qualified individual with a disability as one "who, with or without

reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires." 42 U.S.C. §

12111(8). By contrast, in order to collect benefits such as social security

disability income, an applicant must prove that she is disabled within the meaning of the Social Security Act, i.e., unable to work. See 42 U.S.C. § 416(i). Dahn argues that because Mrs. Beck, in her Social Security application, took a position directly adverse to the position she now takes, this lawsuit is barred by the doctrine of judicial estoppel. The district court agreed and barred Mrs. Beck's claim.

"Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation" and is designed to "protect the integrity of the judicial process." United States v. 49.01 Acres of Land, 802 F.2d 387, 390 (10th Cir. 1986). Despite these laudable goals, this Court rejected use of the doctrine in Parkinson v. California Co., 233 F.2d 432 (10th Cir. 1956), and in 49.01 Acres we intimated that even if we were not bound by the Parkinson precedent, we would not adopt judicial estoppel without grafting an additional requirement onto the doctrine: that the party taking the inconsistent position must have been successful in the earlier litigation. See 49.01 Acres, 802 F.2d at 390. After 49.01 Acres suggested that this limited form of judicial estoppel may be acceptable, our Circuit again rejected the doctrine in Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1520 n.10 (10th Cir. 1991). And although Chrysler Credit spoke clearly in rejecting the doctrine, litigants such as Dahn continue to urge its adoption by our Court. In fact, just before we heard this appeal, we were asked

- 4 -

whether we would apply the doctrine of judicial estoppel in the same context as presented here: SSA applications and ADA claims. See Rascon, 1998 WL 223465, at *5.

In Rascon, we rejected, once again, the doctrine of judicial estoppel. See id. at *9. Our decision in Rascon thus effectively overruled the district court's use of the doctrine to bar Mrs. Beck's claim. Therefore, we remand to the district court for proceedings consistent with this opinion and our opinion in Rascon, noting that although judicial estoppel does not bar Mrs. Beck's claim, Mrs. Beck's SSA application averments "may . . . constitute evidence relevant to a determination of whether [she] is a 'qualified individual with a disability.'" Id.

## III. MR. BECK'S CLAIM

Dahn asserts that Mr. Beck has no claim for associational discrimination under the facts of this case but merely suffered damages as a result of Dahn's termination of Mrs. Beck. The district court agreed, reasoning that Dahn hired the Becks as a team and that once Dahn fired Mrs. Beck, Mr. Beck was no longer part of a team and had to be fired as well. Thus, the cause of Mr. Beck's firing was Dahn's firing of his wife, not its discrimination directly against him because of his association with his wife. This fine distinction, Dahn claims, leads to the conclusion that his claim is derivative of hers rather than a separate associational

discrimination claim; further, because his claim is derivative of hers, it fails on the same grounds--judicial estoppel. Mr. Beck counters that Dahn and the district court are splitting a non-existent hair, that he has an associational discrimination claim because he was discriminated against and lost his job, in the end, because of Dahn's discriminatory animus towards his wife

Title 42 U.S.C. § 12112(b)(4) defines associational discrimination as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." The district court stated the elements it thought necessary to prove associational discrimination. However, in an opinion decided after the district court filed its order and after the parties submitted their briefs on appeal, this Circuit discussed associational discrimination under § 12112(b)(4) in depth and provided the elements necessary to prove a prima facie case of associational discrimination, see Den Hartog v. Wasatch Academy, 129 F.3d 1076 (10th Cir. 1997); Den Hartog's elements differ from those proffered by the district court. They are:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
> (2) the plaintiff was subjected to adverse employment action;
> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Id. at 1085 (emphasis added).

In light of <u>Den Hartog</u>, we hold that Mr. Beck cannot prove a prima facie case of associational discrimination because he was not qualified for the job as a member of an on-site facility management team. Mr. Beck's deposition reads:

Q    And it is your view that Mrs. Beck was discharged because of her disability?
A    Right.
Q    And that, <u>because you were a team, that kind of fell out on you too?</u>
A    <u>Right.</u>
Q    Is that sort of a fair way to say what you are saying here?
A    Right.
Q    Okay. <u>You are not saying that Dahn had animosity to you because Mrs. Beck had a disability and fired you because of that animosity?</u>
A    <u>No.</u> The association.
Q    It is just that you were a team and she was going so you went too?
A    It was the association.

Aplts' App. at 26 (emphasis added). Additionally, in their statement of the case, the Becks charge:

> Derald Beck felt that he was terminated because of his association with his wife insofar as he was not told that only Alice was going to be fired, but both of them. "It wasn't a conversation about whether I was going to stay or not."
> . . . .
> <u>It was Mr. Beck's view</u> that Mrs. Beck was discharged because of her disability, and <u>that they were discharged therefore because they were a team</u>.

Aplts' Opening Br. at 10 (emphasis added).

Thus, according to Mr. Beck's own admissions, he was fired not because Dahn felt animus against him because of his wife's disability. Rather, he was terminated because, once his wife was fired, he was no longer part of a team and, therefore, was not "'qualified' for the job at the time of the adverse employment action." Den Hartog, 129 F.3d at 1085. Considering the unusual factual circumstances presented by this case, we agree with the district court that Mr. Beck has no remedy under the associational disability provisions of the ADA.[1]

## IV. CONCLUSION

In this Circuit judicial estoppel is not a defense to allegations of discrimination in contravention of the ADA. Therefore, we reverse and remand so that the district court may consider the merits of Mrs. Beck's claim. However,

---

[1] However, Dahn continued to aver at oral argument that Mr. Beck's claim is derivative of Mrs. Beck's and conceded that these unusual factual circumstances mean that, should Mrs. Beck have a legally sufficient claim, her remedy should include Mr. Beck's damages.

we affirm the district court's grant of summary judgment in favor of Dahn on Mr. Beck's associational discrimination claim.

Entered for the Court,


Robert H. Henry
Circuit Judge